# SUPREME COURT—IN ADMIRALTY,

---

PHILLIP DODGE *vs.* ELIAS HEMPSTEAD, AND I. HEPPINGTON.

A Seaman leaving his ship in the course of the voyage, without objection from the Master, is not guilty of such a desertion as would work a forfeiture of wages earned antecedently to his quitting the ship.

But having left the ship of his own free will, without just cause, such seaman is not entitled to any wages for the remainder of the voyage.

Suits for damages, founded on trivial causes, to be discountenanced; but where the complainant makes out a clear case of wrong and injury, the Court would not hesitate in its discretion to award suitable damages.

Judge ROBERTSON, acting as Chief Justice, gave judgment as follows:

The libellant in this cause, who was lately third officer on board of the whaling bark "Harmony," brings this suit to recover, from the respondent Hempstead, the master of said ship, wages which the libellant claims to be due him, as by agreement, viz.: one-fortieth share of all the oil and bone taken by the said ship during her late cruise to the northern seas.   Libellant also claims to recover damages against both the respondents, for an unjustifiable assault and battery, which he alleges them to have committed upon his person, on board of said ship, on or about the fourth day of July last, while at sea.

Against the claim for wages, it is contended on the part of Captain Hempstead, that the libellant deserted from the vessel while in the course of prosecuting her cruise, on the seventh day of September; and that he thereby forfeited, under the rules of the maritime law, all right whatever to any wages, either before or after the time of his desertion.

It appears by the testimony, bearing upon this part of the case, that, about two months after the occurrence of the alleged assault, while the ship was lying in Shantar Bay, Capt. Hempstead being dissatisfied with the libellant because he did not succeed, either from unskilfulness, or some other cause, in capturing whales, while the other officers were successful in doing so, disrated the libellant from his position as third mate, and told him he might either go and steer the second mate's boat, or go in the forecastle and pull an oar.   Upon libellant's replying that he had done his best to get whales, and that rather than be sent to pull an oar in another officer's boat, he would prefer to go on shore.   Capt. Hempstead replied, as testified by Mr. Wilfong, the second mate, "you can go ashore;" and, upon libellant's rejoining that he was not the worst man in the ship, the Captain said, "if you don't quit grumbling to me, you will be the worst man in the ship."   Nothing further appears to have been said on the subject until the boats were preparing to lower after whales, when Mr. Wilfong, observing the libel-

lant placing his luggage in the waist boat, said to him, "if you are going to steer my boat, you cannot take these things with you." Mr. Wilfong then asked Capt. Hempstead whether libellant was going on shore, or going to steer the waist boat; to which the Captain replied, in substance, that libellant should go and steer the boat; adding, however, to Mr. Wilfong, that if the libellant left the boat and stayed on shore, he need not take any trouble to bring him off. Libellant did not go on shore, but went on board the brig "Hawaii," of this port; and having requested his clothes to be sent him from the "Harmony," his request was complied with.

There is no doubt that, to the grave offense of desertion, the the maritime law attaches the extraordinary penalty of the entire forfeiture of all wages antecedently earned by the deserting party. But it is equally clear that, in order to constitute a desertion, in the sense of the maritime law, there must not only be a quitting of the ship and her service, against the duty of the party, and with the intention not to return, but such quitting must, further, be without leave—unauthorized.

Now, was there such a quitting of the ship and her service by the libellant? Were the circumstances under which he left the "Harmony," such as to show that his leaving her was clearly against the will of the master? I think not. On the contrary, I think the language and conduct of Capt. Hempstead was such as to show plainly that he was altogether indifferent as to whether the libellant left the ship, or not; and such as to fully justify the libellant in believing that he had Capt. Hempstead's consent. I am, therefore, of opinion that the libellant was not guilty of desertion; and that he did not forfeit his right to wages earned antecedently to his quitting the ship; which portion of wages, I understand, Capt. Hempstead has tendered, or is ready to pay.

But the libellant claims to be paid his share of the ship's catchings, subsequent to the date at which he left her. The precise ground upon which the libellant bases this part of his claim, does not clearly appear; unless, indeed, it be upon the ground that he was forced to leave the ship, by reason of excessive ill treatment, which, I think, cannot be successfully contended on the facts in the case. There is no evidence that

the libellant received any harsh treatment during the two months which preceded the time of his being disrated. And although the language used by Capt. Hempstead at that time, was such as to wound the feelings of the libellant, still, nothing appears to have occurred sufficient to compel the libellant to quit the vessel, in self-protection. For any thing that appears in evidence, he might have remained on board the "Harmony," doing duty as a boatsteerer, up to the end of the cruise ; and had he taken that course, instead of leaving her, it would then have been a question, whether or not he was entitled to wages as third mate, for the time subsequent to his being disrated. His right to recover such wages would then have depended upon the question whether or not the master was justified, by the circumstances of the case, in disrating him. But I think it is unnecessary for me to inquire whether the libellant was rightfully degraded or not, because the master and owners are ready to pay him his wages as third mate, for all the time he did duty as such ; and because, when he ceased to be third mate, he voluntarily left the ship and her service, ceasing thenceforth to do duty on board the "Harmony" in any capacity whatever. Having left the ship of his own free will, without being obliged to leave her, he cannot now be entitled to claim wages which he never earned.

I will now proceed to consider the libellant's claim for damages, for the alleged assault and battery which took place on or about the 4th of July ; and on this part of the case, while the evidence is voluminous, my remarks may be brief. I am satisfied beyond the shadow of a doubt, from a careful review of the whole testimony, that a gross and unprovoked assault was committed on Mr. Dodge by Mr. Heppington. While it cannot be denied on the part of the defense, that the respondent Heppington was the first aggressor in this matter, it is argued that he was justified in striking the libellant, by virtue of his superior station on board as chief mate, and for the purpose of maintaining his authority. Now, it is clear from the testimony, that the occurrence had nothing whatever to do with carrying on any part of the ship's duty, with the due and proper maintenance of the chief mate's authority, or with the suppression of insubordination ; and to say that, when the third mate, being

Phillip Dodge *v.* Elias Hempstead and I. Heppington.

insolently and provokingly taunted ·by his fellow officer, the chief mate, with a want of skill, or something worse, replied, in the heat of the moment, in language of similar tenor, he might therefore be justifiably beat and pommelled into silence and submission by the chief mate, it seems to me, would be going far beyond the bounds of either law, or common sense. Such a doctrine savors too much of the tyranny of brute force to be regarded with ordinary complacency, and its general adoption would lead to perpetual strife and disorder. The fact that the assaulted party was an officer, and not merely a common sailor, tends to aggravate the offence ; although, in the latter case, I apprehend, it would have been eqally unjustifiable, under the like circumstances. It would seem difficult to conceive a more aggravated case, than for one officer to beat, wound, and disgrace another officer, before the eyes of the whole ship's company.

The final question is, did Capt. Hempstead make himself a co-trespasser with Heppington by the share he took in the transaction ? In considering this point, we must bear in mind the fact that Hempstead was master, and this circumstance alone puts him in a very different position from that of Heppington. On reviewing the testimony touching this point, I am of opinion that Capt. Hempstead's primary motive for interfering was a desire to put a stop to the fighting of his two officers ; and, although the manner of his interference would seem to have been harsh towards the libellant, and manifested a strong degree of partiality in favor of Heppington, yet, it was necessary for the good of all concerned that he should by some means restore and enforce order ; and as the circumstances of the case do not appear to prove that the captain's conduct towards the libellant was clearly marked by unnecessary and unusual severity, or cruelty, I do not think he can be held legally responsible in damages.

I fully concur in many of the remarks made by the learned counsel for Heppington, on the impolicy of countenancing suits for damages, of a like nature with the present, when founded, as they sometimes are, on such trivial quarrels and disputes as are of frequent occurrence at sea ; but, no consideration of expediency can be permitted to weigh in a case like the present,

where a complainant makes out a clear matter of wrong and injury; for when that is satisfactorily shown, we must do justice, "let the axe fall where it may."

Let judgment be entered in favor of the libellant, against the respondent Heppington, for the sum of $150 damages; and let the costs be equally divided between these two parties.

C. C. Harris, Esq., for libellant.

J. P. Griswold, Esq., for Hempstead.

A. Campbell, Esq., for Heppington.